UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROL ALEXANDER, as legal representative of COREY JON WANTUCK, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 4:17CV1942 JCH |
| SUZUKI MOTOR OF AMERICA, INC., et al., ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Suzuki Motor Corporation's Motion to Dismiss, filed February 9, 2018. (ECF No. 26). The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff alleges that on October 26, 2013, Corey Jon Wantuck was operating his 2007 Suzuki GSX-R1000K7 motorcycle on State Highway N in St. Charles County, when he attempted to navigate an off-ramp. (Compl., ¶¶ 1, 2). According to Plaintiff, Mr. Wantuck was unable to make the turn in the off-ramp due to a lack of braking power, and instead went over the edge and crashed, sustaining serious injuries. (*Id.*, ¶ 2). Plaintiff maintains the crash was caused by an unreasonably dangerous and defective condition in the front brake master cylinder of his motorcycle, which was designed, manufactured, tested, advertised, distributed, promoted and imported by Defendants

Suzuki Motor of America, Inc. ("SMAI")[1], Suzuki Motor Corporation ("SMC"), and Nissin Kogyo Co., Ltd ("Nissin")[2]. (*Id.*, ¶ 1).

On July 10, 2017, Carol Alexander filed a Complaint as legal representative of Mr. Wantuck. (ECF No. 1). In the Complaint, Plaintiff lodges claims of strict product liability (Count 1), negligence (Count 2), civil conspiracy (Count 3), and violation of the Missouri Merchandising Practices Act (Count 4). Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and pre- and post-judgment interest.

Plaintiff's jurisdictional allegations with respect to SMC are as follows:

12. Defendant Suzuki Motor Corporation is a foreign corporation organized and existing under the laws of Japan that is actively doing business in the State of Missouri, with a principal place of business of 300 Takatsuka-cho, Minami-ku Hamamatsu-shi, SZK 432-8611 Japan….

13. Suzuki Motor Corporation, acting through its employees, agents, and representatives, has transacted and conducted business throughout the United States and the State of Missouri, and specifically targeted the State of Missouri with its conduct and sales activities.

14. Suzuki Motor Corporation expected or should have expected its acts to have consequences through the United States and the State of Missouri, and derived substantial revenue from interstate commerce.

15. Defendant SMAI, and its predecessor ASMC, were at all relevant times the agents, servants, alter egos and otherwise wholly owned and/or controlled by Defendant SMC. As such, the actions of SMAI and ASMC are imputed to Defendant SMC for purposes of personal jurisdiction, and Defendant SMC is otherwise liable for injuries and damages caused by the defective nature of the Motorcycle pursuant to well-established principles of successor liability.

(Compl., ¶¶ 12-15).

As stated above, SMC filed the instant Motion to Dismiss on February 9, 2018, maintaining it is a foreign entity with insufficient contacts to the forum for personal jurisdiction to be asserted.

---

1 According to Plaintiff, SMAI is a wholly-owned subsidiary of SMC's, and the successor in interest of SMC's former American subsidiary, American Suzuki Motor Corporation ("ASMC"). (Compl., ¶ 1).

(ECF No. 26). As support for this position, SMC notes that it is a Japanese corporation, with its principal place of business in Japan. (Defendant Suzuki Motor Corporation's Memorandum of Law in Support of its Motion to Dismiss ("SMC's Memo in Support"), P. 4, citing Declaration of Fumiyasu Tajima[3] ("Tajima Decl."), ¶ 4). SMC has overall responsibility for the design, assembly, and manufacture of motor vehicles, which are distributed globally under the "Suzuki" badge through a variety of distribution networks. (*Id.*, citing Tajima Decl., ¶ 5). According to SMC, it does not design vehicles specifically directed to consumers located in Missouri, nor does it engage in activities such as design, assembly, manufacture, or distribution of vehicles in Missouri or elsewhere in the United States. (*Id.*, citing Tajima Decl., ¶¶ 5, 6).

SMC sells its products in Japan to distributors, including SMAI, the exclusive distributor for Suzuki vehicles in the continental United States. (SMC's Memo in Support, P. 4, citing Tajima Decl., ¶¶ 7-8). Previously SMC sold its products in Japan to ASMC, a now defunct and dissolved corporation. (*Id.*, citing Tajima Decl., ¶ 9). SMC maintains in this particular case, it designed and manufactured the subject motorcycle in Japan, and sold it to ASMC in Japan. (*Id.*, citing Tajima Decl., ¶ 10). Based on these assertions, SMC contends that it lacks the contacts necessary to subject it to jurisdiction in Missouri courts. (*Id.*, PP. 4-5, citing Tajima Decl., ¶¶ 11-24).[4]

## DISCUSSION

---

2 In an Order entered May 25, 2018, the Court dismissed Nissin as a Defendant in this matter. (ECF No. 60).
3 Mr. Tajima is a duly authorized representative and employee of SMC, and a member of its Global Legal Department. (Tajima Decl., ¶ 2).
4 Specifically, SMC contends that it has no contractual or other relationships with dealers in Missouri or elsewhere in the United States; does not distribute motorcycles or other vehicles to dealers in Missouri or elsewhere in the U.S.; has never created authorized dealerships for the sale of Suzuki vehicles; has never made direct sales of any Suzuki vehicles to dealers or to the general public in Missouri or elsewhere in the U.S.; does not control the distribution of Suzuki vehicles anywhere in Missouri or the U.S.; is not licensed or authorized to do business, nor have an agent for service of process, in Missouri or the U.S.; is not a taxpayer in Missouri or the U.S.; has no past or current obligation to pay any franchise, property, or income taxes in Missouri; has never had an interest in real property in Missouri; has never filed a lawsuit in any Missouri court; has never advertised or marketed in Missouri; has never maintained an office or bank account in Missouri; and does not maintain a sales force in Missouri or elsewhere in the U.S. (SMC's Memo in Support, PP. 4-5, citing Tajima Decl., ¶¶ 11-24).

As stated above, in its Motion to Dismiss SMC contests whether this Court properly may exercise personal jurisdiction over it. In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

*Anheuser-Busch, Inc. v. City Merchandise*, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

A federal court engages in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant committed one of the acts enumerated in the state long-arm statute. *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F.Supp. 993, 996 (E.D. Mo. 1995). If so, then the court must determine, "whether the exercise of personal jurisdiction over [the] defendant comports with the Due Process Clause of the Fourteenth Amendment." *Id.* (citations omitted). The Eighth Circuit recently held that courts should not collapse the dual inquiry into a single inquiry, but instead separately must consider whether Defendant's actions fall within the purview of Missouri's long-arm statute, and whether the exercise of jurisdiction over Defendant by a Missouri court comports with due process requirements. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-910 (8th Cir. 2012).

The Missouri long-arm statute provides that a corporation submits to the jurisdiction of courts in Missouri for any cause of action arising from "(1) The transaction of any business within this state; (2) The making of any contract within this state; [or] (3) The commission of a tortious act within this state…." Mo. Rev. Stat. § 506.500. The statute extends jurisdiction to the limits of the

Due Process clause for acts within its enumerated categories. *C.C. v. Suzuki Manufacturing of Am. Corp.*, 2017 WL 4617073, at *2 (E.D. Mo. Oct. 16, 2017) (citations omitted). "Missouri courts have interpreted the statute to include 'extraterritorial acts' producing actionable consequences in Missouri." *Id.* (citing *Myers*, 689 F.3d at 910). In this case, the actionable consequence occurred in Missouri when Mr. Wantuck was injured by the subject motorcycle. Thus, if personal jurisdiction is found under the Due Process Clause, it is proper under the Missouri long-arm statute as well. *Id.*

In analyzing whether a party's contacts with the forum state comport with the dictates of constitutional due process, the Eighth Circuit has held as follows:

> The Due Process Clause requires that minimum contacts exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there[2], and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090-91 (8th Cir. 2008) (internal quotations and citations omitted).

In this circuit, the due process standard has been expressed as a consideration of five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Myers*, 689 F.3d at 911 (citation omitted). The first three factors are primary considerations, while the latter two are

---

[2] In other words, the defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

secondary. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 694 (8th Cir. 2003).

With respect to the third factor, courts distinguish between general jurisdiction and specific jurisdiction. *Miller,* 528 F.3d at 1091. "General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." *Norrise v. Union Pacific R. Co.*, 2008 WL 2859155, at *4 (E.D. Mo. Jul. 23, 2008) (internal quotations and citations omitted); *see also Miller*, 528 F.3d at 1091. Plaintiff here does not contend the basis for personal jurisdiction is the "continuous and systematic" contacts with the state required for general jurisdiction, and so the Court considers only whether SMC's contacts are sufficient for specific jurisdiction. *Miller*, 528 F.3d at 1091.

"Specific jurisdiction is a court's power over the party as it relates to the specific matter before it." *C.C. v. Suzuki*, 2017 WL 4617073, at *2 (citing *Yaeger v. Wyndham Vacation Resorts*, 2014 WL 3543426, at *2 (E.D. Mo. Jul. 17, 2014)). In other words, "[t]o establish specific jurisdiction the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotations and citation omitted). The analysis for specific jurisdiction thus requires a close examination of SMC's contacts in Missouri. *Id*. at *3.

Upon consideration, the Court finds SMC lacks the traditional types of contacts with Missouri that normally would subject it to jurisdiction here. *See* footnote 4, *supra*. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), however, the United States Supreme Court suggested a method by which courts may find specific personal jurisdiction when traditional types of contacts with the forum state may be lacking. Commonly referred to as the "stream of commerce" theory, the Supreme Court suggested that a forum state may

exercise personal jurisdiction over an out-of-state corporation who "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *C.C. v. Suzuki*, 2017 WL 4617073, at *3 (internal quotations and citation omitted).

Since its inception courts, including the Supreme Court, have struggled to apply the stream of commerce theory for specific jurisdiction. *See C.C. v. Suzuki*, 2017 WL 4617073, at *3 ("Because of the plurality opinions in *Asahi* [*Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 107 S.Ct. 1026 (1987)] and [*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011)], the Supreme Court has not conclusively determined the limits of the stream of commerce theory for specific jurisdiction."). This Court thus turns to an analysis of Eighth Circuit cases dealing with out-of-state or foreign defendants for guidance.[5]

In *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (8th Cir. 1990), a single component part manufactured by the foreign defendant (Japan Steel) was incorporated by a third party into a piece of equipment ultimately sold to the plaintiff in the forum state (North Dakota).[6] The Eighth Circuit found no evidence that Japan Steel either knew or should have known its component part would end up in the forum state, nor was there evidence that it had availed itself in any way of the laws and protections of said state. *See Falkirk*, 906 F.2d at 375. Ultimately the Eighth Circuit held the exercise of personal jurisdiction over the foreign defendant was impermissible, as there was no evidence that Japan Steel knew it was manufacturing its products for installation in North Dakota. *See Id.* ("For all Japan Steel knew, Marion could have installed the

---

[5] SMC maintains *C.C. v. Suzuki* was wrongly decided, as Judge Webber declined to apply the controlling plurality position from *J. McIntyre Machinery, Ltd. v. Nicastro*, because the Eighth Circuit had yet expressly to adopt it. The Eighth Circuit has not reconsidered its application of the stream of commerce theory since *Nicastro* was decided, however, and so this Court will continue to consider pre-*Nicastro* Eighth Circuit cases in determining whether the exercise of jurisdiction is proper in this case.

[6] Defendant Japan Steel, a foreign corporation incorporated under the laws of Japan, completed and delivered its part to a third party, Mitsui & Co., in Japan. *Falkirk*, 906 F.2d at 371. Mitsui & Co. then transferred the part to Marion Power Shovel (in Japan), who then transported the part to the United States and incorporated it into the plaintiff's dragline crane

cams into draglines at any number of locations in the United States or abroad."). The Court found that by selling its products to Marion, "Japan Steel did nothing more than place its products in the stream of commerce", and that action, "without more, does not constitute an act of the defendant purposefully directed toward the forum State." *Id.* at 376 (citation omitted).

In *Barone v. Rich Brothers Interstate Display Fireworks Co.*, the plaintiff was injured in a fireworks accident in Nebraska and sued, among others, the Japan-based manufacturer of the fireworks (Hosoya Fireworks Co.). *Barone*, 25 F.3d 610, 611 (8th Cir. 1994). The Eighth Circuit noted that Hosoya had no office, no agent for service of process, and no distributor in Nebraska; it did not advertise in Nebraska; and it did not directly send any of its products into Nebraska. *Id.* After noting that "a manufacturer whose product ends up in a forum state on an 'attenuated, random, or fortuitous' basis has not purposefully directed its activities at the forum state", *see C.C. v. Suzuki*, 2017 WL 4617073, at *4, the Eighth Circuit nevertheless found the district court had personal jurisdiction over Hosoya, as the company used nine distributors in six states to distribute its fireworks in the United States. *See Barone*, 25 F.3d at 615 ("[I]n this case the defendant poured its products into regional distributors throughout the country…Hosoya has reaped the benefits of its network of distributors, and it is only reasonable and just that it should now be held accountable in the forum of the plaintiff's choice (as long as that choice of forum comports with due process, which we believe it does).").

In *Vandelune v. 4B Elevator Components Unlimited*, the plaintiff was injured in a grain dust explosion while working at a grain elevator in Iowa and sued, among others, the England-based manufacturer of the motion sensor on the grain elevator (Synatel Instrumentation Limited). *Vandelune*, 148 F.3d 943, 945 (8th Cir. 1998). Synatel had sold the motion sensor to another English

---

in North Dakota. *Id.*

company (Braime Elevator Components, Limited), which sold it to an affiliate located in Illinois (4B). *Id.* The affiliate then sold it to an Iowa company (Keith's Complete Service), who installed the part on the grain elevator at issue. *Id.* Relying on *Barone*, the Eighth Circuit found the district court did have jurisdiction over Synatel, despite the fact that Synatel had no office, agents, employees, or property in Iowa, and neither advertised nor directly solicited business in Iowa. *Id.* at 948. This was because Synatel designed the motion sensor for United States markets, agreed to distribute it through the Braime affiliate, shipped directly to the Braime affiliate, puts its distinctive logo and identifying decal on each product, and attended technical support meetings in Illinois, close to the Iowa border. *Id. See also Id.* (internal quotations and citation omitted) ("[W]hen a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has purposefully reaped the benefits of the laws of each State in that trade area for due process purposes….These are not attenuated, random, or fortuitous contacts with the forum State.").

*Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607 (8th Cir. 1998), involved the termination of an arrangement between a beverage importer and a distributor. Defendant Desnoes & Geddes, Ltd. ("D & G") was a Jamaican beer brewer, who used three importers to import its beer into the United States. The importers then contracted with distributors of their choosing. *Id.* at 610. The Eighth Circuit held personal jurisdiction over D & G was not appropriate in Minnesota, because once D & G passed title to the beer in Jamaica, it exercised no control over the beer, the importer, or the distributor. *Id.* at 615. Thus, because D & G did not purposefully direct its activities at Minnesota, there was no jurisdiction over it in that state. *Id.*

In *Clune v. Alimak AB*, Joseph Clune was killed when he fell from a construction hoist in Missouri. *Clune*, 233 F.3d 538, 540 (8th Cir. 2000). The plaintiffs (Clune's wife and children) sued,

among others, the designer and manufacturer of the construction hoist, a Swedish corporation (Linden-Alimak AB). *Id.* Linden-Alimak AB used distributors within the United States to sell its products in the United States. *Id.* The Eighth Circuit ultimately concluded that Linden-Alimak AB "did more than simply set a product adrift in the international stream of commerce", as it created the distribution system that brought the hoist to Missouri, designed the construction hoists for the United States market, had exclusive distribution agreements with United States distributors, displayed its logo on products sold in the United States, conducted training seminars in the United States, provided sales brochures and instruction manuals to its distributors, and had members of its parent company's board of directors serve as directors of its subsidiary. *Id.* at 543-44. These circumstances, together with the fact that between twenty and forty hoists sold in the United States ended up in Missouri, convinced the Eighth Circuit that "Linden-Alimak AB/Alimak AB engaged in a series of activities that were designed to generate profits to the parent from its subsidiaries' sales across the United States." *Id.* at 544.[7]

In a recent opinion, Judge E. Richard Webber of this District concluded it was proper for the Court to exercise specific personal jurisdiction over SMC under the "stream of commerce" theory. *See C.C. v. Suzuki*, 2017 WL 4617073. Judge Webber applied the conclusions of prior Eighth Circuit cases to hold that the Court had personal jurisdiction over SMC, as SMC created the distribution network that brought the subject vehicle to Missouri. *Id.* at *5. Judge Webber explained his reasoning as follows:

---

7 The Eighth Circuit rejected Linden-Alimak AB's assertion there was no personal jurisdiction because it did not send its product into a regional distributor to penetrate a discrete multi-state trade area, holding instead as follows:
> A foreign manufacturer that successfully employs a number of regional distributors to cover the United States intends to reap the benefits of sales in every state where the distributors market. Similarly, a foreign manufacturer that successfully employs one or two distributors to cover the United States intends to reap the benefit of sales in every state where those distributors market. The difference is one of form, not function, and the practical effect is the same.

*Clune*, 233 F.3d at 544.

> SMC employs one United States distributor, which it owns. SMC designs the ATV[8] and SMAC[9] assembles the ATV, according to the design of SMC. SMAC does not have the ability to change the design without permission from SMC. The ATVs are then sold to SMAI, previously ASMC, companies wholly owned by SMC, who sell the ATVs to independent authorized dealerships. Creating authorized dealerships in Missouri shows intent to penetrate the Missouri market, and reap the benefit of sales from the Missouri market….All of these facts lead the Court to conclude the subject ATV did not end up in Missouri on an "attenuated, random, or fortuitous" basis and SMC has the requisite minimum contacts with Missouri to satisfy due process standards.

*Id.*

In a prior Order, the Court noted there existed a key factual difference between Judge Webber's case and the instant one. In *C.C. v. Suzuki*, the Court found the plaintiff established a direct link between SMC, Missouri, and the litigation, as follows: SMC designed and sold the parts used to make the ATV to SMAC; SMAC assembled the ATV according to SMC's design and sold it to ASMC, the sole distributor of Suzuki ATVs in the United States at the time the ATV was sold; and ASMC sold and shipped the ATV to Big St. Charles Motor Sports, an authorized Suzuki dealer, where it was purchased by the plaintiff's uncle. *Id.* at *3. By way of contrast, Plaintiff here attached a Vehicle History Report for the motorcycle at issue, which appeared to show the vehicle arrived in Ohio in June of 2007, and title transferred numerous times (mainly in Ohio) before vesting in Mr. Wantuck in Missouri. (*See* Plaintiff's Exh. N). The Court expressed concern that while personal jurisdiction with respect to the subject motorcycle may have existed over SMC in Ohio (under the reasoning of *C.C. v. Suzuki*), Plaintiff had failed to establish that the instant suit arose out of or related to SMC's alleged contacts with Missouri.

Upon further consideration, the Court finds Judge Webber's reasoning in *C.C. v. Suzuki* persuasive, and will apply it here. As in *C.C. v. Suzuki*, SMC here employs one United States

---

8 The vehicle at issue in the case before Judge Webber was an all-terrain vehicle ("ATV").
9 "SMAC" refers to the Suzuki Manufacturing of America Corporation. *C.C. v. Suzuki*, 2017 WL 4617073, at *1.

⸺ 11 ⸺

distributor, which it owns. SMC designed and manufactured the motorcycle at issue, which was then sold to SMAI, previously ASMC, a company wholly owned by SMC. While ASMC apparently did not sell and ship the motorcycle directly to Missouri, Plaintiff claims ASMC had relationships with authorized dealerships in Missouri, thus indicating an intent on SMC's part "to penetrate the Missouri market, and reap the benefit of sales from the Missouri market." *C.C. v. Suzuki*, 2017 WL 4617073, at *5.

"As stated above, specific personal jurisdiction can only be exercised where the litigation results from injuries arising out of or relating to those activities." *Mason v. Mooney Aircraft Corp.*, 2003 WL 21244160, at *8 (W.D. Mo. May 8, 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). Under Eighth Circuit law, however, "[w]hen analyzing the elements of a constitutional relationship between the forum, the cause of action, and the defendant which permit the exercise of specific jurisdiction, proximate causation between the contacts and the cause of action is not required." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 913 (8th Cir. 2014) (citing *Myers*, 689 F.3d at 912). Here, although the motorcycle alleged to have caused Mr. Wantuck's injuries originally was sold in Ohio rather than Missouri, it was of the same type as motorcycles SMC sold into Missouri via its distribution system, and the crash occurred in Missouri. The Court thus finds SMC's placement of its product into the stream of commerce sufficiently relates to Plaintiff's cause of action, and SMC has the requisite minimum contacts with Missouri to satisfy due process standards. *See Mason*, 2003 WL 21244160, at *8.[10] SMC's Motion to Dismiss will therefore be denied.

---

SMAC is owned by two entities, SMC and SMAI. *Id.* at *3.

10 In *Mason*, Judge Dorr of the Western District of Missouri noted as follows:
> In *Giotis* [*v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986)], *supra*, the case relied heavily on by the Eighth Circuit in *Barone*, *supra*, the defendant pointed out that plaintiff had purchased the fireworks in Minnesota and unilaterally brought them into Wisconsin, the forum state, where the injury occurred. *Giotis*, 800 F.2d at 668. The

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Suzuki Motor Corporation's Motion to Dismiss (ECF No. 26) is **DENIED**.

Dated this 10th Day of August, 2018.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

Seventh Circuit found this fact to be of no legal significance as both Wisconsin and Minnesota were within the area into which the defendant purposefully directed its sales efforts. *See id.* *Mason*, 2003 WL 21244160, at *8.