**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL ALEXANDER, as legal representative of COREY JON WANTUCK, | ) ) ) | CASE NO. 4:17-cv-01942-JCH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUZUKI MOTOR OF AMERICA, INC. and SUZUKI MOTOR CORPORATION, | ) ) | |
| | ) | |
| Defendants. | ) | |

**SUZUKI MOTOR OF AMERICA, INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Suzuki Motor of America, Inc. ("SMAI") is entitled to summary judgment for the same reasons set forth in Suzuki Motor Corporation's ("SMC") Motion for Summary Judgment and adopts by reference those arguments. Because SMAI had no involvement with the subject motorcycle, SMAI is independently entitled to summary judgment for several additional reasons.

SMAI should receive summary disposition because it was not in existence at the time the motorcycle was manufactured and does not have successor liability for this suit. During American Suzuki Motor Corporation's ("ASMC") bankruptcy proceeding, the Bankruptcy Court examined and approved the Asset Purchase Agreement and determined that SMAI had no successor liability. Because SMAI did not assume liability for Plaintiff's claims, SMAI cannot be held liable and should be dismissed from this action on summary judgment.

## II.   STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

To this end, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)) (internal quotations omitted). "To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Stranger v. Smith & Nephew, Inc.*, 401 F.Supp.2d 974, 978 (E.D. Mo. 2005) (citing *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)) (internal quotation omitted)." It is well-settled that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The 'mere possibility' of a factual dispute is not enough." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995) (internal quotations omitted). "The plaintiff must present

more than a mere scintilla of evidence in support of his position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252).

### III.   <u>ARGUMENT</u>

SMAI did not manufacture, construct, design, formulate, develop standards, prepare, process, assembly, test, list, certify, warn, instruct, market, advertise, package, or label the subject Suzuki motorcycle, and thus cannot be liable to Plaintiff under Missouri product liability or negligence law. Plaintiff cannot proceed under a theory of successor liability, because he is enjoined from doing so by the Bankruptcy Plan.

**A.    SMAI cannot be liable to Plaintiff under Missouri product liability law because it did not manufacture, construct, design, formulate, develop standards, prepare, process, assembly, test, list, certify, warn, instruct, market, advertise, package, or label any product.**

Missouri has "adopted the rule of strict liability in defective product claims as defined in Restatement (Second) of Torts § 402A." *Crump v. Versa Prod., Inc.*, 400 F.3d 1104, 1107 (8th Cir. 2005) (citing *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 438–39 (Mo. banc 2002); *Lippard v. Houdaille Indus., Inc.*, 715 S.W.2d 491, 492 (Mo. banc 1986); and *Blevins v. Cushman*, 551 S.W.2d 602, 606 (Mo. banc 1977)). Under Missouri law, "strict liability is not absolute liability." *Id.* at 1108. Instead, this rule "[c]auses a person who sells a product "in a defective condition [un]reasonably dangerous to the user or consumer" to be liable to the ultimate user or consumer for any harm caused by use of the product if "(a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *Id.* at 1107 (quoting *Gramex*, 89 S.W.3d at 439).

3

Here, it will be impossible for Plaintiff to prove the product allegations he has levied against SMAI because SMAI did not manufacture, construct, design, formulate, develop standards, prepare, process, assembly, test, list, certify, warn, instruct, market, advertise, package, or label the subject Suzuki motorcycle. (*See* Statement of Undisputed Material Facts [hereinafter "SUMF"] ¶ 85.)

In fact, SMAI did not and could not have had any involvement with any 2007 Suzuki GSX-R1000 motorcycle as it did not incorporate until October 31, 2012 or begin business operations until April 1, 2013. (SUMF ¶¶ 85, 86.) Because SMAI had absolutely no involvement in the distribution chain through which the subject motorcycle came into Plaintiff's possession, Plaintiff will not, as a matter of law, be able to show that SMAI caused his injuries. There is no genuine issue of fact that can be established on this point.

**B.** **Because SMAI did not assume liability for Plaintiff's claim following ASMC's bankruptcy, this Court should grant summary judgment in favor of SMAI.**

SMAI did not assume liability for Plaintiff's claims in the bankruptcy of ASMC. SMAI assumed *some* liability for "Suzuki Product Liability," under the Asset Purchase Agreement, but this term of art was narrowly defined to include Express Warranty Claims, Lemon Law claims, and liability under the National Traffic and Motor Vehicle Safety Act ("NTMVSA"). (SUMF ¶ 100.) As Plaintiff's claims are not encompassed by the claims SMAI expressly assumed under the Asset Purchase Agreement, summary judgment is warranted.

    1.   The claims asserted by Plaintiff against SMAI are not Express Warranty Claims, as defined by the Asset Purchase Agreement.

"Express Warranty Claims," as defined by the Asset Purchase Agreement, mean "a claim under a written warranty issued by Seller but, for the avoidance of doubt, ***excluding claims for personal injury***, third party property damage, or consequential damages of any kind." (SUMF ¶

101.) (emphasis added). Plaintiff did not plead any allegations based upon a written warranty issued by ASMC. Further, this provision as defined explicitly excludes personal injury claims, the essence of Plaintiff's present Complaint. Thus, SMAI cannot be liable to Plaintiff under this part of the Asset Purchase Agreement.

> 2.   The claims asserted by Plaintiff against SMAI did not fall under any states' Lemon Laws, as defined by the Asset Purchase Agreement.

SMAI also assumed "Suzuki Product Liability," to the extent ASMC products became the subject of an actions brought under "any Lemon Laws with respect to Suzuki Products." (SUMF ¶¶ 100, 103.) The Complaint here does not reference Missouri "Lemon Laws," nor any other similar laws. In fact, even if Plaintiff had made allegations under Missouri's Lemon Law, such allegations would fail to state a claim upon which relief can be granted, because Missouri's Lemon Law explicitly excludes motorcycles from its purview. *See* V.A.M.S. 407.560(6) (excluding "motorcycles" from the definition of "new motor vehicle").

> 3.   Plaintiff's claims do not arise under the NTMVSA because this federal statute does not provide a private right of action.

SMAI assumed ASMC's liability "for recalls and other obligations under the NTMVSA with respect to Suzuki Products." (SUMF ¶ 100.) NTMVSA Obligations are those arising under "the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. 30101 et seq., as amended." (SUMF ¶ 102.) In other words, SMAI did not assume liability for "all recalls." Rather, SMAI assumed liability for such recall obligations "*under* the NTMVSA." Because Plaintiff possesses no private right of action under the NTMVSA, summary judgment for SMAI is appropriate as a matter of law.

Neither the NTMVSA nor Part 573 of the regulations establishes a private right of action. In fact, courts examining the issue have uniformly determined that the Vehicle Safety Act confers

no private right of action. *See, e.g., Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000) ("[T]he Safety Act confers no private cause of action to enforce its notification requirements…the extensive array of administrative remedies, including participation there by 'interested parties,' and the specific provision authorizing the Attorney General to bring a civil enforcement action create a strong inference that Congress did not intend to create a private right of action."); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 256 F. Supp. 2d 884, 900 (S.D. Ind. 2003) ("And to this court's knowledge, every court addressing this issue has held that the Safety Act does not provide a private right of action."); *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 131 (S.D.N.Y. 1982) (acknowledging the "unavailability of a private right of action under the NTMVSA") (citing *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) ("The district court correctly ruled that Congress did not intend to create private rights of action in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by the NHTSA.")).

This conclusion finds strong support in the following provision, which addresses the ability of the Secretary to conduct hearings to decide whether a manufacturer has reasonably met the notification requirements under the Vehicle Safety Act:

> On the motion of the Secretary or on petition of any interested person, the Secretary may conduct a hearing to decide whether the manufacturer has reasonably met the notification requirements under this section. Any interested person may make written and oral presentations of information, views, and arguments on whether the manufacturer has reasonably met the notification requirements. If the Secretary decides that the manufacturer has not reasonably met the notification requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter.

49 U.S.C. § 30118. "Secretary" refers to the Secretary of Transportation. The above provision clearly envisions that the Secretary—not individual plaintiffs—would address manufacturers' decisions to conduct product recalls. As set forth above, the Secretary on its own motion or on

petition by an interested person, may conduct a hearing to determine whether the manufacturer reasonably met the notification requirements in the Vehicle Safety Act. *Id*. The Secretary then examines whether the manufacturer reasonably met the notification requirements. *Id*. The Secretary then decides whether the manufacturer reasonably met the requirements, although an interested person may present information, views, and arguments at the hearing. *Id*. The record is undisputed that NHTSA never pursued sanctions against Suzuki for its conduct in conducting the recall or otherwise indicated the response was untimely or insufficient.

The NTMVSA specifically addresses recall obligations when a manufacturer files for and undergoes Chapter 11 Bankruptcy:

> **A manufacturer's filing of a petition in bankruptcy under chapter 11 of title 11, does not negate the manufacturer's duty** to comply with section 30112 or sections 30115 through 30120 of this title. **In any bankruptcy proceeding, the manufacturer's obligations under such sections shall be treated as a claim of the United States Government against such manufacturer**, subject to subchapter II of chapter 37 of title 31, United States Code, and given priority pursuant to section 3713(a)(1)(A) of such chapter, notwithstanding section 3713(a)(2), **to ensure that consumers are adequately protected from any safety defect or noncompliance determined to exist in the manufacturer's products.** This section shall apply equally to actions of a manufacturer taken before or after the filing of a petition in bankruptcy.

49 U.S.C. § 30120A (emphasis added). By assuming liability "for recalls and other obligations under the NTMVSA," SMAI assumed the obligations ASMC would otherwise have had under the NTMVSA. As referenced above, this only meant that SMAI assumed the duty to comply with Section 30120, which references the remedies for defects and non-compliance. 49 U.S.C. § 30120A. Section 30120 relates primarily to the adequacy of the remedies the manufacturer of the defective or noncomplying motor vehicle must provide, but even these obligations arise only "when notification of a defect or noncompliance is required under section 30118(b) or (c)." 49 U.S.C. § 30120. Section 30118(c), which in relevant part to the present case, provides:

(c) Notification by manufacturer.—A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer—

    (1)    learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or

    (2)    decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

49 U.S.C. § 30118(c).

The language included in the Asset Purchase Agreement properly describes SMAI's obligations for notification under the NTMVSA, but does nothing more. It certainly does not imply a private right of action to Plaintiff where none would otherwise exist. Summary judgment should appropriately be granted in favor of SMAI.

## IV.    CONCLUSION

SMAI seeks summary judgment from this Court because SMAI did not design, manufacture, test, market, advertise, import, distribute, promote, warranty, or sell the 2007 GSX-R1000K7 at issue in this case. SMAI did not even incorporate until October 31, 2012, or begin operation until April 1, 2013.

Although SMAI purchased certain business operations from ASMC as part of the bankruptcy, the Bankruptcy Court specifically relieved SMAI of successor liability for the actions of ASMC. Further, while SMAI did assume some product liability under the Asset Purchase Agreement, SMAI did not assume any liability for personal injury product liability claims as part of the bankruptcy. As discussed extensively herein, the obligations and liabilities assumed by SMAI under the Bankruptcy Plan are not implicated by Plaintiff's allegations. Plaintiff's Complaint does not implicate express warranties, Lemon Laws, nor does Plaintiff possess a private

right of action to enforce SMAI's obligations under the National Traffic and Motor Vehicle Safety Act.

Based on the foregoing, as well as the undisputed facts enumerated in this brief, SMAI requests that this Court enter summary judgment in its favor on all counts, and for all other just and proper relief.

Respectfully submitted,

By:  */s/ Jeffrey J. Mortier*
    Randall R. Riggs (ADMITTED *PRO HAC VICE*)
    Jeffrey J. Mortier (ADMITTED *PRO HAC VICE*)
    FROST BROWN TODD LLC
    201 North Illinois Street, Suite 1900
    P.O. Box 44961
    Indianapolis, Indiana  46244
    317.237.3800
    FAX 317.237.3900
    *rriggs@fbtlaw.com*
    *jmortier@fbtlaw.com*

    Carl J. Pesce, #39727MO
    Benjamin S. Harner, #65950MO
    THOMPSON COBURN LLP
    One US Bank Plaza
    St. Louis, Missouri  63101
    314.552.6000
    FAX 314.552.7000
    *cpesce@thompsoncoburn.com*
    *bharner@thompsoncoburn.com*

    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2020, the foregoing was served via the Court's electronic filing system to be served on the following counsel of record:

Tyler S. Thompson  
DOLT, THOMPSON,  
 SHEPHERD & CONWAY, PSC  
13800 Lake Point Circle  
Louisville, KY  40223  
*tthompson@kytrial.com*

James P. Lemonds  
BROWN & CROUPPEN, P.C.  
211 North Broadway, Suite 1600  
St. Louis, MO  63102  
*jiml@getbc.com*

*/s/  Jeffrey J. Mortier*

LR03264.0640376   4826-8057-7712v2

10